Argument is 192293 Esparraguera v. Army. Mr. Walker whenever you're ready. Thank you Chief Judge Paros and good morning. May it please the court. Certain things are just not in dispute here. The government does not dispute that Maria Esparraguera was denied notice and an opportunity to respond both before and after the removal from the Senior Executive Service and the motion. Mr. Walker we're very happy to have you in our courtroom but you'll have to convince me that your case doesn't belong here. Your client was entitled to an informal hearing which she had but we don't have jurisdiction over informal hearings. We have this jurisdiction over final orders or decisions of the board and your client did not get that. So why shouldn't we dismiss this appeal? So I would disagree that she did not receive a final order decision of the board which is all that 7703 requires. There's no dispute here that the order she did receive was an order of the board. The only dispute is whether it was a final order but it plainly was. It was the last thing the board did with respect to Mrs. Esparraguera's removal and it conclusively ended all the board proceedings in this case. The court's jurisdiction under 7703 is not, as the government suggests, limited to final orders or decisions that are issued under the appellate procedures of Title 5 Section 7701. As this court squarely held in the Horner case and the TC Circuit before in the Frazier case discussed in our reply brief at page 6, review under 7703 also applies to cases that fall in the board's original jurisdiction such as informal hearings pursuant to Section 3592. And the board's regulations recognize that the board had jurisdiction there. At 5 CFR Section 1201, 121A, it says, quote, the board has original jurisdiction over removals of career appointees from the senior executive service for performance reasons. That describes this case exactly. So the board had jurisdiction over the case and it concluded with an order that was the final order of the board. And while the case was... And what did the final order decide? It declined to issue a decision on the legality of her removal, which we argue was error and a violation of due process. And while it referred the record to other agencies, nothing in 7703 says anything about other agencies' final order of the board, which this was. The government concedes those other agencies did not have to do anything, have not done anything, and are not expected to do anything in light of the final board order here. And if finality did depend on whether some other agency might do something, employees would not know when to appeal. They couldn't tell when the appeal clock, which runs from when the board issues notice of the final order, would start or stop. The jurisdictional rules should be clear. And I'd also add that the strong presumption of judicial review needs to inform this court's interpretation of 7703. Because we have a final order that... Yes, Your Honor. I just want to move off of the jurisdictional question a little, and broaden it a little. Tell me what, in your view, she was entitled to, that she failed to get at the board level. At the board level, because she was deprived of the property interest, she was entitled to meaningful post-removal review. And the government doesn't dispute that when there is a deprivation of property, appropriate post-removal review... So the board was supposed to That was the issue, right? I mean, that was the basis for her reassignment. Yes, it should have evaluated whether the agency's decision was conducted, was supported by at least substantial evidence, or supported by a preponderance of the evidence. Whether it was conducted in accordance with the procedures required by law, and whether, you know, was consistent with her due process rights. A neutral decision maker is all we want. Someone who can rectify the errors that happened before the agency. And speaking of those, the process that Ms. Sparadero was due before she was removed from the senior executive service. We've asserted both constitutional and non-constitutional grounds for relief. Yeah, but counsel, until you move on to that, I mean, we're only one minute into your argument or so, I don't know, a couple minutes in. I'd really like you to spend more time on this jurisdictional question, because like Judge Flory, that is, for me, a very big stumbling block in this case. Okay. How, for example, do you contend with the fact that 3592, which is the only thing that establishes her entitlement to this informal hearing, expressly says, such hearing shall not give the career appointee the right to initiate an action with the board under 7701? So, all that language does is say that a particular kind of board proceeding, that she cannot receive that. The appellate procedure is a 7701. But it doesn't say that... That's the basic appellate route for an employee from the MSPB, isn't it? It is the basic one, but there are also cases, they're said to fall within the board's original jurisdiction. And that's what the board's regulations say an informal hearing is here. And actually, when ALJs are removed from office, that's how they obtain board review, under section 7521. That's a, like an informal hearing, it falls within the board's original jurisdiction. And this court has authority to review the ALJs appeals from that as well, as we discussed at page 6. So, what's your citation to their reviewability here? What do you say, are you saying there's another statutory provision we should be looking at with respect to these SES employees? So, reviewability, well, so there is no express statutory right to review for the ALJs, other than the broad and generally applicable right to judicial review under 7703, which is not linked to section 7701, as this court held in Horner and the DC Circuit before it explained in Frazier. Likewise, this USC section 1295A9 does not limit itself to cases that arose under 7703. Counsel, I agree with you that 7703 is not limited to 7701. And you agree that she's not entitled to a 7701 process because of 3592. But my question is, what 7703 does limit our review to final orders or decisions of the Merit Systems Protection Board? Can you explain to me again what your best argument is for why this order, which is an order referring the record to another agency, nonetheless amounts to a final order or decision of the MSPB? Well, so it is an order, it's labeled as an order, no one disputes that it's an order. And it's final because it's the last thing the board had to say about this particular proceeding. There are no further board proceedings, there will be no further board decisions, orders, or hearings with respect to her case. And we're trying to figure out when the right to review and the time for review is activated. That provides a clear jurisdictional world that employees and this court can follow. And again, one of our arguments is that it was a violation of due process and a misinterpretation of 3592 itself for the board not to review the legality of Mrs. Barragher's removal from the senior executive service. And so if that's not... Counselor, you're familiar with the Greenhouse case from the DC District Court, which of course is not binding on us. If it were a decision of this court, would you agree it's directly on point? So I think one would have to ask whether that would still be good law in light of the Supreme Court's decision in Elgin from 2013, I believe, where the court explained that where the CSRA channels someone to a board proceeding, that any constitutional or other claims need to proceed through the board and then through this court to review. And that's the proper way to do it rather than proceeding in a district court. And I also, in terms of the Greenhouse's of what 3592 itself entitled someone to, it erroneously relied on the board's Berger and Charo decisions, which it failed to appreciate that there is a protected property interest in a career senior executive service appointment. And I really urge the court to compare the language that we have here to the statutes that were issued in cases like Hellman and Riley, which applied the presumption of judicial review and even stronger presumption of judicial review of constitutional claims. In Hellman, the statute expressly said a decision was final notwithstanding section 7703, and the court still held that it didn't bar review of constitutional claims under 7703 itself. Likewise, in Riley, a decision was deemed final, inclusive, not subject to review, but major procedure errors could still be reviewed by this court. And again, the board issued an order, it is a final order in these proceedings, and that is all that 7703 requires, particularly in light of the presumption of judicial review. Steve, can I ask you a question before he stops? I know he's talking stuff. Of course. So my question to you is, I don't think either party cited Jones versus MSPB. It's a case out of this court, it's, I think it's non-PREC, which may be why you suggest didn't cite it. But in the Jones case, it was a request to reopen an appeal, and we held that that didn't amount to a final order. So what, it was the last thing issued by the board. It is an order denying the request to reopen, the third repetitive request to reopen, I should say. But... I have to say, I'm not familiar with that case, but I would guess that if it was to reopen an appeal that had previously concluded with a final order that had been, you know, the point at which board proceedings were expected to stop, that that earlier order would have been appealable under 7703. And I think that's essentially where we are here. And I know I'm using my rebuttal time, but I would very likely, very quickly like to address the government's only other disputed question. It only disputes two questions of law. And that's whether there's a protected property interest in the SES appointment, and there clearly is. There's a property interest when a specific benefit can only be taken away for specific reasons. Here, a career senior executive service appointment can only be taken away for specific reasons like cause or unacceptable performance. A demotion from that appointment is a deprivation of property that entitles someone to due process. Congress has told us this is a demotion or a reduction in grade because a senior executive service is classified above GS-15 under Section 3132A2 of Title 5, and she was taken from position above GS-15 to a lower position at GS-15. And that's clearly a demotion. And there's finally no dispute that if she was deprived of a property interest, she was denied the due process to which she has been entitled, and that the proper remedy is her reinstatement. And I'd like to reserve the remainder of my time. Thank you. Thank you. Ms. Finan? Finan? Counsel? Yes, Your Honor. This is Molly Finan on behalf of the Army. Yes. May it please the Court. We submit on behalf of the Army that the Civil Service Reform Act is a comprehensive and exclusive mechanism that defines the rights and obligations of the parties in this case, and that pursuant to the Supreme Court's Elgin decision, Mrs. Barragara received all of the process and relief that was her due. She has no right under the CSRA to an adjudication of the merits of her removal or her reassignment. As the Court previously pointed out, Section 3592A1 guarantees her only a right to an informal hearing, which she received, and the United States District Court for the D.C.'s Greenhouse decision and the MSPB's Charro and Berger decisions further confirm that. Counsel, suppose that I was of the view that she was horrifically deprived of due process in this case. Suppose that that was my view. How could she ever get in front of an attorney? Is there simply no way at all? I mean, I understand your arguments about how she did not perfect an appeal over which we have jurisdiction in this case. Is there any way she could have? I think it would be highly fact-specific, and there's an endless array of factual scenarios. She could have, as other SES and non-SES have done, asked the administrative law judge to make rulings. He might have denied the obligation to make a ruling. He might have made a ruling on the merits that might have created a final appealable order to this court. What about going to While pursuant to the Elgin case, district court would seem to be available only if this court were to find, or the courts generally were to find, that she is not covered by the CSRA. To the extent she is covered by the CSRA, her rights are defined by the CSRA, and her avenues of relief would be only to the ALJ and the board and in appropriate factual circumstances to this court on appeal. We have submitted that those factual circumstances are not here because the order referring records that she purports to appeal in this case, it does not contain that decision on anything, right? There were no motions for additional process that were denied. There were no requests of the ALJ for anything that she was denied. So the order simply is a ministerial act that I understand your response to my initial question. Because she did indicate in her briefing to the ALJ that she thinks it's wrong that the ALJ can't review this, that she believes she was denied due process. She made those arguments, but then ultimately she seemed to acquiesce, I don't remember the precise language, in the idea that the ALJ couldn't actually decide the constitutional concerns that she had. And so they're not addressing this opinion ultimately or this referral order. So are you saying that if she had said to the ALJ, I want you to address my due process, you must address my due process, you are required to address my due process issues, if she had made arguments like that, and if the ALJ had responded by saying we can't actually assess constitutionality because we're an administrative tribunal or whatever, if they had declined to do so and indicated any partial reason, then the entire due process issue would be squarely in front of this court? I would say it might be, yes, to the extent that an actual constitutional argument was developed below. Your Honor is correct that the record reflects generalized statements of grievance before the ALJ that she was not being given all that she felt that was her due, procedurally and substantively. But there is in the record below absolutely no development of those arguments, there's no citation to any authority, there's no application of law to fact, there's no development of fact to support any of those issues. So the ALJ did what he was obligated to do pursuant to statute, he facilitated Mrs. Serager's collection of a record, that she was not... Counsel, this is Judge Laurie, just to clarify, I think we're dealing with an AJ here rather than ALJ, but on the merits, would you say that there is no constitutional right to a particular job in the federal government, particularly an SES position? Yes, Your Honor is correct. Mrs. Serager has no argument to the premise that she has been denied a notice and opportunity to hear her denied procedural due process under the Constitution, but she skips over that initial inquiry of whether she had a property or liberty interest at stake in the first instance. And as we submitted in our brief, and I and I'll repeat here, she has not established that there was any constitutionally protected property right at stake here. She is asking the state, albeit not overtly, to recognize a new property right in an SES position, but no authority has ever done so in the past, and the authorities to have considered the issue have limited the property right to continued employment. Her continued employment has never been at stake here. She, before the removal, was employed by the Army and she remains employed by the Army. She was simply reassigned from one personnel system to another. And she kept her salary? She did keep her salary. She kept her salary level, and on that I can point you to some pages in the record. Her SS-50. Counsel, this is Judge Moore. She kept her salary, but hasn't her potential salary increases be diminished by virtue of the move from SES to GS-15. She is not going to receive the increases she would have as an SES. She's going to ultimately have a much lower salary under the GS-15. Is that correct? Your Honor, we, well, this goes back to the exhaustion requirements. She did not raise these arguments below. I didn't ask whether she raised them. I in a GS-15 position, you're correct. She will not ultimately earn what she might have earned as an SES. But courts to have considered the issue have found that she has no property interest based on a future speculative potential to earn more money or to earn bonuses, future prospects of advancement, that sort of thing. That's this court's Wilson decision and the board's Berger decision. There is no property right created in those future prospects. On this record and as reflected in the record at 829 and 431, her salary as an SES, her basic salary, rolled over to a GS-15 position as did her SES leave balance, which is higher than a GS. There was no reduction in pay or grade. I would like to correct for the statement by Plaintiff's Counsel, a change in personnel system from SES to GS-15 is not a reduction in grade. The authority cited section 5 U.S.C. 3132 does not say that SES is a grade above GS-15. It says SES is classified above GS-15. That is a Council, this is Jess Moore again. One sort of thing that caught me in this process, which is part of why I'm struggling with whether or not she has a property right, is because there's actually a statute that guarantees her continued status as an SES except for two things, for poor performance or misconduct. So she's got sort of a statutory guarantee of remaining in the two things can warrant her removal from the SES. Doesn't that statutory award create a property interest? Counsel, I'm sorry I can't hear you at all. Counsel, I still can't hear you. Can you please turn the volume up or take yourself off speaker? Oh, I'm sorry. Apologies, Your Honor. Her property interest would be defined by the CSRA and as you know there is a statute that provides someone has a position in SES unless and until, you know, poor performance or misconduct. But that in and of itself doesn't create the courts have considered this issue have found there is no property interest in a particular position. SES is not a higher grade than GS-15. It may be a higher rank, but the CSRA got rid of an appealable adverse action for reduction in rank in 1978. Grade is defined in 5 U.S.C. 7511-83 to mean a classification under a position classification system. She did not change grade within the SES nor should she change grade within GS-15. She went from SES to GS-15 and this court's Wilson decision and the MSPB Berger's decision have found that those are not that's not the type of transfer that would be a reduction in grade. Okay, Counsel, thank you. Your responses were helpful to me on this point, but do you have a question about misconduct versus poor performance? One of the things that's troubling me about the course of government action in this case is that Congress clearly contemplated two scenarios in which SES employees could be removed. They could be removed for misconduct or they could be removed for poor performance. And there is no question among any of the parties, it's undisputed, that if she were removed for misconduct she would absolutely have a right of appeal and she could assert the due process concerns that she has in this case. But if she is instead removed for poor performance, the government's position is she has no rights of appeal at all. Is that correct? That's correct. So what is the reason she was removed in this case? Since Congress has laid out two alternative paths, one of which they clearly contemplated, if misconduct is the basis for her removal, she has a right to appeal. Because, you know, when it comes to misconduct, my children would be the first ones to tell you, there are a lot of extenuating circumstances, Mom. You know, yes, I ate the cookies, but you deprived me of lunch or whatever. You know, there are often, and I don't mean to belittle her claims, by the way, by analogizing them to my kids, but in any point being, Congress clearly contemplated a right of appeal if misconduct formed the basis for the removal. What is the basis for her removal in this case? Yes, Your Honor, the basis for removal is poor performance. Based on what? Based on the removal decision at Appendix 6 through 8. That doesn't answer my question. Why was she deemed to have poorly performed? Because the Undersecretary, as articulated in her removal notice, found that he had lost confidence in her ability to perform duties, and I'm reading from Appendix 6, I have lost confidence in her ability... What's the answer? She used this rotation plan to give a that he wouldn't otherwise have had. Wasn't that the issue? Yeah, and isn't that the very misconduct, though? You see my point, and you're trying to evade it, which I understand why, because it's very hard. It's hard for me to believe, if I'm a textualist, that Congress intended someone who is fired solely on the basis of an act of misconduct should have a right of appeal, and yet Congress would have permitted the agency to morph what is clearly only a misconduct determination into a poor performance rubric, such that it could evade the right of appeal she would otherwise have had. That's my concern. Yes, Your Honor, and so courts... I have two responses to that. This court's Baruch decision does a good job of explaining that if the actions... if there's no indicia of misconduct, an agency must proceed with a performance-based removal, but if the actions may or may not, you know, have indicia of misconduct, then the agency has the option to proceed under either Chapter 75 or Chapter 35. That is at their election, and it inured, in this case, to Mrs. Berger's benefit. Had she been removed from misconduct, yes, she would have had appeal rights, but she would have been removed from federal service entirely, right? She would have lost her job, and yes, that would have triggered a property interest at that point. The agency, in recognition of her 30 years of service and the fact that this was a single instance, albeit a grave one, instead of going that route, they removed her from SDS and re-assigned her to GS-15 on the basis of unsuccessful performance, and that allowed her to keep her employment in federal civil service. It's a part of the Delicate Balancing Act that Congress determined, right? In that, in exchange for no appeal rights, Congress gave individuals in Mrs. Berger's position the right to fall back into another SDS position or to fall back into another personnel system. That's the trade-off that Congress made. Wait, counsel, can I make sure I understand? Maybe I may not understand the difference between removal for misconduct and removal for poor performance. Is every person who's removed for poor performance automatically maintained federal employment? Not every person. SDS, specifically career SDS, such as Mrs. Berger was. So a career SDS employee who's removed for poor performance is guaranteed continued employment? Yes. 5 U.S.C. 3594 gives her a guaranteed fallback to either another vacant SDS position or to an equivalent tenure in another personnel system, presumptively GS-15. Okay, one more question along those lines. Could a removal for misconduct automatically result in her removal from all government service or could a removal for misconduct also amount to a, you know, a transfer or a demotion to a GS-15 or whatever you want to call it? No, the statutory remedies for removal of a non-probationary career SDS would be either removal from federal service entirely or for suspension of more than 14 days. Okay, I thank you. That helps me understand something. One last question. Is it really the case, the facts in this case, that her supervising authority, who is the person who does her performance reviews, rated her as an outstanding for the relevant time period? And even when presented with evidence that she may have committed improper personnel procedures in the course of even taking that into account, I still continue to maintain her outstanding performance rating as a 5 and that in my 30 years of government service I've never seen someone better than her, basically. I may not be getting it 100% exactly right, but are those the facts? Almost. So the laudatory praise of But then he subsequently declined to change that at all, even after being informed about the potentially prohibited personnel practice. Yes, he did. But further to the factual point, the petitioner's brief is replete with allegations that the Secretary of the Army does not dispute facts. We do dispute the facts. We do believe she was given all the process to which she was due. She was not. Counsel, let me just, I know your time is up, but I'm just going to stop you. You might be right on jurisdiction, you may even be right on the property right, but I think this lady was horrifically deprived of due process and I'm embarrassed that you're standing here saying otherwise. I think that the process, the secretive process that took her out of the ability to respond without knowledge of what was going on, where even the very supervisor who supervised her for many years and who continued to think she was outstanding was cut out of the process of deciding what her performance review should be for that year. I think that that behavior was outrageous and I absolutely think it violates due process. And since your time is up, I suggest you sit down because you may have won on point one, you may have won on point two, but you will never win with me on point three. But since we're over time, I don't want to prolong this too long, but I would just like a clarification following up on Judge Moore's point, which is, I guess I was surprised by your answer early on because I read, I didn't read the government's brief as foreclosing her ability to make, provide, appeal or go forward with a due process challenge in district court. In fact, the government, I think in its brief, cites the Coleman case from the DC District Court, Davis versus Billingham from the DC District Court, and there are other post-Elgin district court cases where employees not entitled to MSPB review, which I thought you were arguing was this case, get a district court case for due process challenge. Now, I don't expect the government to say positively she does have a challenge, but I guess I was a little surprised because you seem to suggest that even that avenue of trying the due process challenge in district court was somehow foreclosed or not appropriate, and I was surprised by that. Is that your position? Your Honor, I think it's a very nuanced question that would be highly fact-dependent. So you're right, I think that this is also an issue of first impression to what extent the CSRA provides remedies for someone in Mrs. Farragher's position. So there's a lot of uncharted territory here, and to an extent the government's answer is not finite. All I can say is I think it's highly fact-dependent. If you're aware of the cases I've just cited to you, and there are others coming out of the DC District Court and elsewhere, correct? Yes. All right, thank you. Mr. Walker, we'll come back to you for rebuttal now. Thank you, Your Honor, and I'll get back to the jurisdictional question very briefly, but to answer Judge Moore's question about why she was removed, it was, quote, based on OSC's finding that she had committed a prohibited personnel practice contained in an OSC report that was admittedly withheld from her until after action had been taken based on the report. That's Appendix 443 for the Department's counsel admitted it was withheld from her. Addressing the Jones case that was raised earlier, that held the denial of the motion to reopen was really an attempt to just prolong the time for seeking an appeal, which isn't the case here. We timely appealed from the order, and Jones distinguished in the earlier case called McCarthy, which recognized that such orders can be appealable in appropriate circumstances. On jurisdiction, the government appears to admit that it would be sufficient if we raised below the argument that she was entitled to a decision from the ALJ, and she did that. And it's important to keep the entire context of this proceeding in view. The ALJ repeatedly, not just at the hearing, but throughout the process before the Board at Appendix 137, 762, and then 842 at the beginning of the hearing, said, I am NOT going to issue a decision. The Board regulations forbid me from doing that. Nonetheless, Mrs. Baraguer's counsel objected. 854, under the Fifth Amendment, she was entitled to a written decision. She will not get that process due to her. 857, no decision will issue in this proceeding. The implementation here of 3592A2 does not meet the constitutional standard. And then again, on the very next page, at Appendix 858, the ALJ again explained he was constrained by the that he would not issue a decision on the legality of her removal. So we preserved it fully. And that interlocked decisions, that he would not issue a decision on the legality for removal, ripened when he issued the final order here, entitling her to seek, and that triggered her right to judicial review, and she can obtain review of that refusal to provide a merit decision. And additionally, under this Court's precedents, such as Board versus GSA, which we cited, someone is not required to make futile arguments in order to preserve them for this Court's review. And here, although we did it, it was futile to make that, because the Board regulations and precedents made clear that the ALJ's hands were tied. And the Board doesn't have any forum to change those. Can I just ask one final question, Mr. Walker, and it's the point that I obsessively pressed with the other side, which is, is it not your view that if things don't go the way you'd prefer in the Court today, that you think you do have a chance or a likelihood of being able to press the due process claim in District Court? So while we think that 7703 in the presumption of judicial review, titleless to review here, you know, it may be difficult under Elgin to say that the CSRA channels us to the Merit System Protection Board. I think that Elgin makes clear that that's supposed to come up to this Court for review, but if the Court holds that we cannot take that, then I think, again, the serious constitutional questions that design review of these constitutional claims would necessitate being able to take some sort of District Court action. But again, I think 7703 provides all the textual support that this Court needs to hear her case and to reinstate her. Thank you. Thank you. Anything further for my colleagues? If not, we thank both parties. The case is submitted and that will conclude our proceeding for this morning. Thank you. The Honorable Court is adjourned.